1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

WILLIE SMITH,

Plaintiff,

v.

JAMES COX, *et al.*,

Defendants.

3:15-cv-00511-RCJ-VPC

**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF No. 64). Plaintiff did not file a response. For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF No. 64) be granted.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Willie T. Smith ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At the time of the incidents alleged, plaintiff was temporarily incarcerated at Northern Nevada Correctional Center ("NNCC") for medical treatment, to be returned to Ely State Prison ("ESP"). (ECF No. 17 at 2.) Pursuant to 42 U.S.C. § 1983, brings a First Amendment retaliation claim and an Eighth Amendment deliberate indifference claim against NNCC Warden Isidro Baca ("Baca") and Dr. Karen Gedney ("Dr. Gedney"). (ECF No. 31 at 4-5.)

Plaintiff's first amended complaint alleges that during his time at NNCC, he was refused adequate medical care for his right eye enucleation surgery as part of a "policy" to deny medical care to African American prisoners. (ECF No. 32 at 5-13.) Plaintiff complaints that as part of this alleged policy, he was denied adequate pain medication, and he was also denied a prosthesis for his eye. Plaintiff asserts that this resulted in an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. Additionally, plaintiff alleges that defendants transferred plaintiff from NNCC back to ESP prior to receiving a prosthetic eye. He claims that defendants acted in

1   retaliation for his requests for medical treatment and for his June 24, 2014 grievance against Dr.

2   Gedney and the medical department. (ECF No. 32 at 5-14.)

3         On January 9, 2018, defendants filed their motion for summary judgment. (ECF No. 64.)

4   Defendants arguments are as follows: First, plaintiff has failed to properly exhaust administrative

5   remedies prior to filing his complaint. (*Id.*) Second, plaintiff is unable to meet either the objective

6   component or subjective component of his deliberate indifference claim. (*Id.*) Third, plaintiff was

7   transferred from NNCC to ESP for proper reasons, so is unable to establish that defendants engaged

8   in retaliation. (*Id.*) Fourth, plaintiff's claims against Baca lack merit because Baca did not

9   personally participate in the challenged conduct. (*Id.*) Finally, plaintiff's claims for damages are

10  barred because defendants are entitled to qualified immunity.

11        On January 10, 2018, the district court issued a minute order notifying plaintiff that he must

12  file an opposition to defendants' motion for summary judgement within twenty-one days of service.

13  (ECF No. 68 at 2.) Plaintiff failed to oppose defendants' motion with the specified time-frame.

14  Over two months later, on March 26, 2018, the court issued a minute order that *sua sponte* granted

15  plaintiff an extension to April 13, 2018. (ECF No. 69.) In both minute orders, the court advised

16  plaintiff that the failure to properly and timely oppose defendants' motion would permit the court

17  to consider the facts of the motion as undisputed. (*Id.*) The court further cautioned plaintiff that it

18  may grant defendants' motion for summary judgment under such circumstances, should it have

19  merit. (*Id.*) Plaintiff has not filed an opposition as of the date of this report and recommendation.

20       **II.    LEGAL STANDARD**

21        Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v.*

22  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary

23  judgment when the record demonstrates that "there is no genuine issue as to any material fact and

24  the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

25  330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over

26  facts that might affect the outcome of the suit under the governing law will properly preclude the

27  entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

28

1    counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only

2    where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements,

3    speculative opinions, pleading allegations, or other assertions uncorroborated by facts are

4    insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

5    (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage,

6    the court's role is to verify that reasonable minds could differ when interpreting the record; the

7    court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d

8    1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

9        Summary judgment proceeds in burden-shifting steps. A moving party who does not bear

10   the burden of proof at trial "must either produce evidence negating an essential element of the

11   nonmoving party's claim or defense or show that the nonmoving party does not have enough

12   evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

13   210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis

14   of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in

15   favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank*

16   *of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any

17   inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

18   *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

19       Where the moving party meets its burden, the burden shifts to the nonmoving party to

20   "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*

21   *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light

22   one," and requires the nonmoving party to "show more than the mere existence of a scintilla of

23   evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury

24   could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The

25   nonmoving party may defeat the summary judgment motion only by setting forth specific facts

26   that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248;

27   *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

28

1    Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

2    material facts" will not defeat a properly-supported and meritorious summary judgment motion,

3    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

4         For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant

5    in motions and pleadings are admissible to the extent that the contents are based on personal

6    knowledge and set forth facts that would be admissible into evidence and the litigant attested under

7    penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

8    2004).

9                                    **III.    DISCUSSION**

10    **A.        Failure to Exhaust Administrative Remedies**

11            **1.        Exhaustion under the PLRA**

12         Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

13    respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

14    confined in any jail, prison, or other correctional facility until such administrative remedies as are

15    available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534

16    U.S. 516, 524 (2002).  The requirement's underlying premise is to "reduce the quantity and

17    improve the quality of prisoner suits" by affording prison officials the "time and opportunity to

18    address complaints internally before allowing the initiation of a federal case.  In some instances,

19    corrective action taken in response to an inmate's grievance might improve prison administration

20    and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

21         The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S.

22    81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the prison holds out,

23    enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th

24    Cir. 2009) (citing *Woodford*, 548 U.S. at 90).  Thus, exhaustion "demands compliance with an

25    agency's deadlines and other critical procedural rules because no adjudication system can function

26    effectively without imposing some orderly structure on the course of its proceedings." *Woodford*,

27    548 U.S. at 90–91.

28

1    In the Ninth Circuit, a motion for summary judgment will typically be the appropriate

2    vehicle to determine whether an inmate has properly exhausted his or her administrative remedies.

3    *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light

4    most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary

5    judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and

6    the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of

7    exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at

8    1170.

9    Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The

10   defendant bears the burden of proving that an available administrative remedy was unexhausted

11   by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts

12   to the inmate to "show there is something in his particular case that made the existing and generally

13   available administrative remedies effectively unavailable to him by 'showing that the local

14   remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"

15   *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

16       **2.    NDOC's Inmate Grievance System**

17   AR 740 governs the grievance process at NDOC institutions. An inmate must grieve

18   through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (Def. Exh. J.) The

19   inmate may file an informal grievance within six months "if the issue involves personal property

20   damages or loss, personal injury, medical claims or any other tort claims, including civil rights

21   claims." (*Id.* at 6.) The inmate's failure to submit the informal grievance within this period "shall

22   constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.) NDOC

23   staff is required to respond within forty-five days. (*Id.* at 8.) An inmate who is dissatisfied with

24   the informal response may appeal to the formal level within five days. (*Id.*)

25   At the first formal level, the inmate must "provide a signed, sworn declaration of facts that

26   form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional

27   relevant documentation." (*Id.*) The grievance is reviewed by an official of a higher level, who

28

1   has forty-five days to respond. (*Id.* at 9.) Within five days of receiving a dissatisfactory first-level

2   response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*)

3   Officials are to respond to a second-level grievance within sixty days, specifying the decision and

4   the reasons the decision was reached. (*Id.*) Once an inmate receives a response to the second-

5   level grievance, he or she is considered to have exhausted available administrative remedies and

6   may pursue civil rights litigation in federal court.

7        **3.**     **Exhaustion of Plaintiff's Claims**

8        Defendants argue that plaintiff did not properly exhaust his available administrative

9   remedies, as he failed to follow the grievance procedure outlined by AR 740. (*See* ECF No. 64 at

10   14-16.) Plaintiff failed to file a response to defendants' motion for summary judgment, despite

11   the court's granting of a *sua sponte* extension of time. (ECF No. 69.) Plaintiff's original deadline

12   to file his response was extended from January 31, 2018 to April 13, 2018. (*Id.*) As of the date of

13   this report and recommendation, three months have elapsed since plaintiff's extension of time

14   expired. (*Id.*) The court issued two minute orders advising plaintiff of the consequences for failing

15   to file a response (*id.*; ECF No. 68), yet plaintiff has failed to notify the court of any extenuating

16   circumstances to excuse his tardiness. The court has provided plaintiff with ample notice and

17   leniency, *Rand v. Rowland*, 154 F.3d 952, 960–61 (1998), and will now accept defendants' factual

18   assertions as undisputed for purposes of determining whether summary judgment is proper. FED.

19   R. CIV. P. 56(e)(2).

20        Defendants argue that plaintiff only filed two grievances related to the issues raised in his

21   complaint—Grievance Log #80969 and Grievance Log #78756. (ECF No. 64 at 14; Def. Exhs.

22   L, M.) After thoroughly reviewing the record, and in the absence of any dispute, the court accepts

23   as true that Grievance Log #80969 and Log #78756 are the only grievances relevant to the issue

24   of whether plaintiff exhausted his administrative remedies. (*Compare* Def. Exh. K *with* Def. Exh.

25   L *and* M.) The court will examine each grievance in turn.

26

27

28

1

                                                   *i.*        *Grievance Log #80969*

2

Regarding Grievance Log #80969, plaintiff properly completed all three levels of the

3 grievance process. However, the allegations in the grievance differ from those in the first amended

4 complaint. (*Compare* Def. Exh. L *with* ECF No. 32.) At the informal level, plaintiff grieved that

5 he was getting inadequate pain medication following his eye surgery, that he was having unrelated

6 pain that was not being addressed, and that the medication he was receiving caused stomach aches.

7 (Def. Exh. L at 6-7.) While this harm is similar to that of the harm alleged in plaintiff's first

8 amended complaint, nowhere in this informal level grievance does plaintiff allege that he was

9 denied medical care because of a cost-cutting policy at NNCC or because he is African American.

10 *See id.*

11         Both of these missing allegations are essential to his Eighth Amendment claim against

12 defendants. First, plaintiff's original complaint survived screening on the basis of his "allegation

13 of a specific policy of utilizing inferior pain medication."[1] (ECF No. 3 at 7.) Second, without

14 allegations to suggest discriminatory or deliberately indifferent policy, plaintiff's allegations in his

15 grievance amount to a challenge to the quality of his medical care and the course of his treatment.

16 This type of harm is not actionable under the Eighth Amendment. *Toguchi v. Chung*, 391 F.3d

17 1051, 1059 (9th Cir. 2004). Because plaintiff's informal grievance alleged only that he received

18 inadequate medical care, it failed to alert the prison to the allegedly unlawful medical policy and,

19 ultimately, deprived the prison of the opportunity to eliminate that policy. *See Griffin*, 557 F.3d

20 at 1120 (9th Cir. 2009).

21         Nor did plaintiff's first level grievance and second level grievance in Grievance Log

22 #80969 "provide enough information … to allow prison officials to take appropriate responsive

23 measures." *Id.* (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)). In his first level

24 grievance, plaintiff alleged that prison officials retaliated against him for filing his informal

25

26 [1] Plaintiff's original complaint alleged an NDOC policy of providing "inadequate and inferior pain medication as a policy to cut cost; forcing those in their care to suffer." (ECF No. 1-1 at 8.) The court allowed plaintiff to proceed

27 on his claim of deliberate indifference on the strength of this allegation. (ECF No. 3 at 7, 8.) However, plaintiff modified his deliberate indifference claim in his first amended complaint, complaining that he received inferior

28 medical care due to a race-based medical policy, rather than due to a cost-based policy. (ECF No. 32 at 4.)

grievance by transferring him back to ESP, and did not follow up on the allegations in his informal grievance that he had been denied medical treatment. (*See* Def. Exh. L at 4.) Similarly, at the second level, plaintiff improperly combined the allegations raised at the first two grievance levels by alleging that prison officials retaliated against him "in order to avoid providing [him] medical care." (Def. Exh. L at 1.) Both the first or second level grievance depart substantially from the allegations plaintiff raises in his informal grievance. Neither suggests the existence of a discriminatory or otherwise deliberately indifferent medical policy. Like the grievance responder at the informal level, responders at the first and second levels lacked notice of "the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120.

Finally, plaintiff's reference to retaliation in his first and second level grievance in Grievance Log #80969 do not suffice to exhaust that claim. The PLRA requires "proper exhaustion" which means "using all steps the agency holds out, and doing so *properly* (so that the agency address the issues on the merits)." (citation omitted) (emphasis original). As indicated above, NDOC provides inmates with three grievance levels to facilitate the resolution of their problems. (Def. Exh. J.) Plaintiff's informal grievance makes no mention of retaliation, leaving the informal level of the grievance process unexhausted as to this claim.[2] (*See* Def. Exh. L at 6.)

Plaintiff then improperly attempted to exhaust his retaliation claim alongside his deliberate indifference claim at the first and second level, in violation of (Def. Exh. L at 1, 4.) Because AR 740.09(2)(F) prohibits grievances from containing more than one issue, (Def. Exh. J at 8 (AR 740.09(2)(F)), grievance responders properly disregarded his allegation of retaliation. (*See* Def. Exh. L at 2-3); *Jones*, 549 U.S. at 218 (finding the prison's requirements "define the boundaries of proper exhaustion"). As a result, plaintiff's Grievance Log #80969 indicates that he did not exhaust his retaliation claim at any of the three grievance levels that NDOC holds out to prisoners. *Woodford*, 548 U.S. at 89.

---

[2] The court notes that plaintiff's informal grievance in Grievance Log #80969 is the subject of his retaliation claim, and could not have contained any reference to retaliation not yet committed. However, plaintiff was free to file a separate informal grievance to alert prison officials to the alleged retaliation. Indeed, the fact that he could not exhaust his retaliation claim at the informal level of Grievance Log #80969 should have alerted him that a separate informal grievance was necessary.

1    The court finds that defendants have carried their burden of proving that Grievance Log

2    #80969 does not suffice to exhaust his available administrative remedy for either his Eighth

3    Amendment deliberate indifference claim or his First Amendment retaliation claim against Baca

4    and Dr. Gedney. *Albino*, 747 F.3d at 1172

5                              ii.      *Grievance Log #78756*

6    Grievance Log #78756 also fails to satisfy the requirements of the PLRA.  At the informal

7    level, plaintiff once again alleged that he was not receiving proper medical care while at NNCC.

8    (Def. Exh. M at 2.)  And, once again, he failed to allege facts to suggest that this was due to a

9    wider policy at NNCC to provide inadequate medical care. (*See id.*)  Additionally, Grievance Log

10   #78756 includes no allegations regarding a retaliatory transfer.  (*See id.*)  Like Grievance Log

11   #80969, Grievance Log #78756 does not contain allegations sufficient to "alert the prison to the

12   nature of [plaintiff's] problem. *Griffin*, 557 F.3d at 1120 (quoting *Strong v. David*, 297 F.3d 646,

13   650 (7th Cir. 2002).

14   Even if it did, plaintiff failed to file a first level grievance or second level grievance in

15   Grievance Log #78756.  Plaintiff's failure to appeal to the first or second level within the specified

16   time frame violated AR 740.06(4)(A) and constituted abandonment of his claims under AR

17   740.09(4)(A).  (*See* Def. Exh. J at 6); *Jones*, 549 U.S. at 218 (finding the prison's requirements

18   "define the boundaries of proper exhaustion").   Accordingly, Grievance Log #78756 deprives

19   prison officials of the "time and opportunity to address complaints internally before allowing the

20   initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 624 (2002).

21   In sum, the court finds that defendants have carried their burden of establishing that neither

22   set of plaintiff's grievances suffices to exhaust his administrative remedies for his claims.  While

23   plaintiff did take Grievance Log #80969 through all levels of the NDOC grievance process, it

24   failed to alert prison officials at any level that plaintiff may have been denied adequate medical

25   treatment pursuant to an unlawful medical policy. *Griffin*, 557 F.3d 1117-1120.   Plaintiff's

26   Grievance Log #78756 similarly fails to allege facts alerting the prison to the nature of his Eighth

27   Amendment deliberate indifference claim.  Nor are plaintiff's grievances sufficient to exhaust his

28

1    retaliation claim, as he did not properly use all the steps NDOC provided him. *Woodford*, 548

2    U.S. at 89. Plaintiff's Grievance Log #80969 did not contain any allegation of retaliation at the

3    informal level, *Woodford*, 548 U.S. at 89, and his attempt to allege this claim at the first and second

4    level was properly ignored for presenting more than one issue. (Def. Exh. J at 8.) Plaintiff

5    commits a more fundamental error in Grievance Log #78756 by failing to appeal informal

6    grievance to either the first or second levels.

*iii.    Unavailability Defense*

7

8    The burden now shifts to plaintiff "to come forward with evidence showing that there is

9    something in his particular case that made the existing and generally available administrative

10    remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of*

11    *Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Plaintiff has not filed a response to defendants'

12    motion for summary judgment so he is unable to make this showing. Moreover, the record does

13    not suggest that remedies were effectively unavailable to plaintiff. Because no material facts are

14    in dispute, defendants have carried their burden of proving that plaintiff failed to exhaust available

15    administrative remedies prior to filing this action. *See Albino*, 747 F.3d at 1166. The court

16    recommends that defendants' motion for summary judgment should be granted.

**IV.    CONCLUSION**

17

18    For the foregoing reasons, the court finds that defendants have established that plaintiff

19    failed to exhaust the administrative remedies available to him. Accordingly, defendants' motion

20    for summary judgment (ECF No. 17) should be granted.

21    The parties are advised:

22    1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

23    the parties may file specific written objections to this Report and Recommendation within fourteen

24    days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and

25    Recommendation" and should be accompanied by points and authorities for consideration by the

26    District Court.

27

28

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 64) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

DATED: July 24, 2018

_____
**UNITED STATES MAGISTRATE JUDGE**